**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDWARD JOSEPH MCNATT,** | ) | |
| Petitioner, | ) | **C.A. No. 05-128 Erie** |
| | ) | |
| v. | ) | |
| | ) | **District Judge McLaughlin** |
| **SUPERINTENDENT GEORGE PATRICK, et al.,** | ) | **Magistrate Judge Baxter** |
| | ) | |
| Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus be dismissed, and that a certificate of appealability be denied.

**II.    REPORT**

Petitioner Edward McNatt is a state prisoner incarcerated at the State Correctional Institution at Houtzdale, Pennsylvania, who asserts that the Pennsylvania Board of Probation and Parole ("PBPP" or "the Board") has violated his constitutional rights by refusing to release him on parole. The Commonwealth has filed a response to the petition [Document #6] and it is now ripe for disposition.

Petitioner was convicted of Forgery and Theft by Deception in the Court of Common Pleas of Venango County, Pennsylvania, and was sentenced to a term of imprisonment of 32 months to 12 years on October 20, 1998. Petitioner's minimum sentence was set to expire on June 20, 2001. His initial request for parole was denied by the PBPP on May 17, 2001. Parole was denied on four subsequent occasions by the Board's decisions dated June 28, 2003, October 23, 2003, October 19, 2004, and March 29, 2005. The Board gave the following reasons for denying parole following the most recent hearing:

> YOUR LACK OF REMORSE FOR THE OFFENSE(S) COMMITTED.
>
> THE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS.

>    REPORTS, EVALUATIONS AND ASSESSMENTS CONCERNING YOUR PHYSICAL, MENTAL AND BEHAVIOR CONDITION AND HISTORY.
>
>    YOUR UNACCEPTABLE COMPLIANCE WITH PRESCRIBED INSTITUTIONAL PROGRAMS.

(Document # 6, Exhibit 3 at p. 7). Petitioner has not attempted to appeal any of the decisions denying him parole in the Pennsylvania courts.

The instant petition was filed on April 29, 2005, and contains the following claims:

>    A.   The Board is violating petitioner's Fifth Amendment right against self-incrimination by requiring that he participate in a Therapeutic Community Program. In order to participate in this program, petitioner must admit to criminal charges which are still pending in New Jersey state court.
>
>    B.   The Board is denying petitioner Due Process by forcing him to admit to the New Jersey offense in order to successfully complete the Program.
>
>    C.   The Board is discriminating against petitioner by requiring him to complete the Program, but permitting other inmates to be paroled without completing it.
>
>    D.   The DOC shows favoritism by removing some inmates from the Program, but not others.
>
>    E.   The Board relies on past information that never changes, thereby denying petitioner his right to impartial review.
>
>    F.   The Board's use of "lack of remorse" as a reason for denying parole is improper as petitioner has shown remorse.
>
>    G.   Petitioner completed all requirements on the 2001 parole denial, but was again denied parole in January, 2003.
>
>    H.   Petitioner has successfully dealt with mental health issues, which were the reason for his crimes.
>
>    I.    Petitioner would succeed if released on parole.
>
>    J.   Petitioner disagrees that "the interest of the Commonwealth would be injured" by his release.
>
>    K.   The use of petitioner's past history of a mental or physical disability violates the Americans with Disabilities Act.

(Document # 3 at ¶13).

### A. Exhaustion and Procedural Default

Petitioner concedes he has not attempted to appeal the denial of parole in the state courts. The only means for a Pennsylvania prisoner to appeal the denial of parole in state court is through a petition for writ of mandamus in the Commonwealth Court of Pennsylvania. DeFoy v. McCullough, 393 F.3d 439 (3d Cir. 2005). However, this avenue of review is not available to petitioners who, like Petitioner, assert claims other than an *ex post facto* challenge to the parole decision. "[W]e conclude that claims of constitutional violations in the denial of parole in Pennsylvania need not be presented to the state courts via a petition for writ of mandamus in order to satisfy the requirement of exhaustion." Id., 393 F.3d at 445. Petitioner is not making an *ex post facto* claim and, accordingly, he was not required to seek relief in the state courts prior to filing the instant petition for writ of habeas corpus.

### B. Statute of Limitations

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed under the applicable one-year limitations period. The statute reads:

> (d) (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). A federal court must undertake a three-part inquiry in analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year limitations period. First, the court must determine the date that the petitioner's direct review concluded and the judgment became "final" for purposes of triggering the one-year period under section § 2244(d)(1)(A). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to section 2244(d)(2). Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented.

Here, Petitioner is not seeking review of his underlying conviction but, instead, seeks review of administrative decisions denying him parole. The one-year limitations period normally runs from the expiration of the time to seek direct review. 28 U.S.C. §2244(d)(1)(A). Pennsylvania does not, however, provide for direct review of parole decisions. Defoy, supra; Coady v. Vaughn, 770 A.2d 287, 289 (Pa. 2001). Therefore, the limitations period began to run from the date of the Board's decision denying parole. Barnhart v. Kyler, 318 F.Supp.2d 250, 262 note 11(M.D.Pa. 2004). Petitioner's challenges to parole proceedings which occurred more than a year prior to April 29, 2005, are untimely.

Further, nothing in the record indicates that Petitioner is entitled to take advantage of any of the exceptions to the one-year limitations period. Specifically, he has failed to show that his claims are based on a constitutional right newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; nor has he shown that his claims are based on a factual predicate that could not have been discovered through the exercise of due diligence. 28 U.S.C. §2254(d)(1)(C-D). Finally, there is no indication that the doctrine of equitable tolling

4

should be applied here.[1] Petitioner's claims addressed to the 2001 and 2003 denials of parole are untimely, and the court is barred from considering those claims. 28 U.S.C. §2244(d).

Petitioner's remaining claims, addressed to the October 19, 2004 and March 29, 2005, denials of parole, are timely filed and will be addressed on their merits.

### C.     Merits.
#### 1.     Fifth Amendment Claim

Petitioner's first claim is that his Fifth Amendment right against self-incrimination has been violated because, as a prerequisite to obtaining consideration for parole, he is required to complete a treatment program which requires him to detail and admit to charged and uncharged criminal conduct. Petitioner alleges that he has refused to comply with the requirements of the Therapeutic Community Program because it would require him to admit to crimes which are the subject of pending charges in New Jersey state court. His refusal to comply with this program was one of the reasons given for the most recent (March 29, 2005) denial of parole. Petitioner's argument fails because the Fifth Amendment does not apply in the context of parole proceedings.

The Fifth Amendment right against self incrimination is violated when compelled statements are used against a person in a criminal case. Chavez v. Martinez, 538 U.S. 760, 766-68, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003) (plurality opinion); Renda v. King, 347 F.3d 550, 559 (3d Cir.2003). Even if, as Petitioner alleges, the Board's requirement that he complete a particular institutional program is the equivalent of a demand that he admit to crimes he was not convicted of in order to be considered for parole, he has, nevertheless, not been compelled to be a witness

---

[1] The one-year limitation in §2244(d) is a statute of limitations, not a jurisdictional bar, and may be equitably tolled. Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 618 (3d Cir. 1998). "Equitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims. Mere excusable neglect is not sufficient." Id. at 618-19 (internal citations, quotations, and punctuation omitted). Petitioner does not assert that any extraordinary circumstances beyond his control prevented him from filing a timely habeas petition concerning the 2001 and 2003 parole denials.

against himself in a criminal proceeding. See Minnesota v. Murphy, 465 U.S. 420, 435 n. 7, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984)(parole revocation proceeding is not a "criminal proceeding" within the meaning of the Fifth Amendment). Therefore, even accepting Petitioner's allegations as true, the Fifth Amendment is simply not applicable unless and until a statement made by Petitioner is used against him in a criminal proceeding.

Moreover, there is no "compulsion" for purposes of the Fifth Amendment arising out of the requirements of a prison treatment program. In McKune v. Lile, 536 U.S. 24, 41, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002), the court considered a similar claim concerning a prison treatment program which required participating prisoners to disclose prior sexual misconduct, whether charged or uncharged. In determining whether "compulsion" had occurred, the plurality opinion focused on the consequences suffered by a prisoner who refuses to make the required disclosures. In McKune, the consequences included a change in the prisoner's security status, transfer from a minimum security unit to a maximum security unit, and a change from a two-person cell to a four person cell in a more dangerous area of the prison. 536 U.S. at 30-31. The Court concluded that the consequences to the prisoner, while adverse, were not sufficient to constitute compulsion. In reaching this conclusion, the Court cited to Ohio Adult Parole Authority v. Woodward, 523 U.S. 272, 286, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998), where the Court found no unconstitutional compulsion when a death row inmate was made to choose between incriminating himself at his clemency interview or having adverse inferences drawn from his silence, and Murphy, supra, where a parolee was asked about uncharged criminal conduct and confessed out of fear that his refusal to answer would have resulted in the revocation of parole and 16 months incarceration.

Petitioner's claim in this case likewise fails. If the threat of additional incarceration (Murphy) or carrying out a death sentence (Woodward) is not sufficient to establish "compulsion" for purposes of the Fifth Amendment, then the consequence suffered by Petitioner here, which amounts to the possibility of a denial of parole, also does not rise to the level of compulsion. See Thorpe v. Grillo, 80 Fed.Appx. 215, 220 (3d Cir. 2003)(No Fifth Amendment violation where prisoner's "refusal to admit his guilt and the resulting inability to participate in the treatment

6

program did not extend his term of incarceration or automatically deprive him of consideration for parole."); Folk v. Attorney General of the Commonwealth of Pa., 425 F.Supp.2d 663 (W.D.Pa. 2006) (Gibson, J.)(no compulsion for purposes of Fifth Amendment where consequence of failing to participate were decreased chance of parole); Wolfe v. Pennsylvania Department of Corrections, 334 F.Supp.2d 762, 773 (E.D.Pa. 2004) (No Fifth Amendment violation where participation in program was voluntary and consequences were not severe enough to be compulsion); Boddie v. New York State Division of Parole, 288 F.Supp.2d 431, 441-42 (S.D.N.Y.2003) (reaching same conclusion under New York's parole statute).

Petitioner's refusal to make admissions in the context of the Therapeutic Community Program has, at most, decreased his chances for parole.[2] This decrease in the likelihood of parole is not a severe enough consequence to amount to compulsion under the Fifth Amendment, and his Fifth Amendment claim (Claim A) lacks merit. Folk, supra.

### 2.   Due Process Claim - Participation in Prison Program.

Petitioner also asserts that, by conditioning his parole release on his participation in a program which he cannot complete without admitting to past, uncharged criminal conduct, the Board has deprived him of due process (Claim B). Petitioner does not indicate whether he believes this claim arises under procedural due process or substantive due process. Hence, each will be addressed.

"[T]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Absent the creation of a liberty interest in parole, a state's decision to deny parole does not create any procedural due process protections. Both the federal and Pennsylvania state courts have held that parole is not a

---

[2] It must be remembered that there were several reasons for the most recent denial of parole, only one of which was Petitioner's failure to comply with prescribed institutional programs. Thus, his failure to participate in the program may, in reality, not have had a decisive impact on the ultimate decision to deny him parole.

constitutionally protected liberty interest under Pennsylvania law. Burkett v. Love, 89 F.3d 135, 139 (3d Cir.1996); Rogers v. Pa. Bd. of Probation and Parole, 555 Pa. 285, 724 A.2d 319, 323 (Pa.1999). Because Petitioner cannot establish that he possesses a liberty interest in parole, he has not demonstrated a violation of a protected constitutional right which would allow him to present a procedural due process claim. Accordingly, the Board's decision did not violate Petitioner's right to procedural due process.

Petitioner's claim also fails under a substantive due process analysis. The Third Circuit has held that "even if a state statute does not give rise to a liberty interest in parole release under Greenholtz, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." Block v. Potter, 631 F.2d 233, 236 (3d Cir.1980). The Supreme Court has held that "although a person may have no 'right' to a valuable government benefit, and may be denied it for any number of reasons, 'there are some reasons upon which the government may not rely.' " Burkett, 89 F.3d at 139 (citing Perry v. Sindermann, 408 U.S. 593, 597 (1972)). Under substantive due process, as the term has been construed by the courts, a state may not deny parole on constitutionally impermissible grounds, such as race or in retaliation for exercising constitutional rights. Burkett, 89 F.3d at 140. In addition, a state may not base a parole decision on factors bearing no rational relationship to the interests of the Commonwealth. Block, 631 F.2d at 237.

Here, Petitioner complains that he is being required to admit to past criminal offenses, including the underlying crimes in this case. The Commonwealth's interest in this regard is to determine Petitioner's progress towards rehabilitation. It is certainly legitimate for a state to consider a prisoner's progress in rehabilitative programs before releasing him on parole. See, McGinnis v. Royster, 410 U.S. 263, 277 (1973)(it is legitimate for state to afford prison officials adequate opportunity to evaluate an inmate's rehabilitative progress before considering him for parole eligibility); McKune, 536 U.S. at 47 ("acceptance of responsibility is the beginning of rehabilitation."). Thus, the Board's consideration of Petitioner's refusal to admit his crimes and accept responsibility for same bears a rational relationship to the Commonwealth's interest in

determining whether Petitioner has been rehabilitated. Thus, consideration of Petitioner's failure to comply with the Therapeutic Community Program does not violate his right to substantive due process.

### 3. Equal Protection Claims

Petitioner next asserts that the Board is discriminating against him because not all prisoners are required to complete the Therapeutic Community Program, and some other inmates are paroled without completing it (Claim C). He also asserts that "favoritism" is being shown to some inmates in being permitted to avoid the Program (Claim D). Respondent interprets these claims as equal protection challenges and asserts that Petitioner has failed to identify a class of inmates to whom he is similarly situated. This Court agrees and finds that Petitioner's claim lacks merit.

An equal protection claim arises when an individual alleges that he has intentionally been treated differently from others similarly situated. Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Where no fundamental right is impinged and where no suspect classification is used, the difference in treatment need only be rationally related to a legitimate state interest. Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Because there is no constitutionally protected liberty interest in parole, Greenholtz, 442 U.S. at 7, and Petitioner has not asserted that the Board used a suspect classification in its decision-making process, the Board's decisions are subject to rational basis review. McGinnis, 410 U.S. at 270; Brown v. Zavaras, 63 F.3d 967, 970 (10th Cir.1995).

Here, Petitioner's claim necessarily fails because he cannot establish that any other prisoner is "similarly situated" for purposes of equal protection review. Petitioner was denied parole for several reasons, each of which is an appropriate consideration under Pennsylvania law. Pennsylvania law grants the Board broad discretion to refuse or deny parole. More specifically, the Board is authorized:

> To release on parole any convict confined in any penal institution of this Commonwealth as to whom power to parole is herein granted to the [B]oard ... whenever in its opinion the best interests of the convict justify or require

9

> his being paroled and it does not appear that the interests of the Commonwealth will be injured thereby.

61 Pa. Cons.Stat. Ann. § 331.21(a) ("Power to parole; refusal of parole at expiration of minimum term; controlled substance screening; recommitment and reparole"). The Board's consideration encompasses many different factors, including:

> ... the nature and circumstances of the offense committed ... the general character and background of the prisoner ... the conduct of the person while in prison and his physical, mental and behavior condition and history ...

61 Pa. Cons.Stat. Ann. § 331.19 ("Investigation of circumstances of offenses and character and history of prisoner; matters considered in granting parole"). Thus, the Board's power to consider Petitioner's background, including his inability to complete institutional programs (regardless of the reason for failure) is unbridled. Further, the Board's decision is, necessarily, individualized. In such a setting, "no two prisoners, being different human beings, will possess identical backgrounds and characters. Indeed, it is difficult to believe that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics." Rowe v. Cuyler, 534 F.Supp. 297 (E.D.Pa.), aff'd 696 F.2d 985 (3d Cir.1982) (citing Taliferro v. New Jersey Parole Board, 460 F.2d 289, 290 (3d Cir.1972) (per curiam); Bennett v. People of the State of California, 406 F.2d 36, 38-39 (9th Cir.1969); Marciano v. Coughlin, 510 F.Supp. 1034, 1039 (E.D.N.Y.1981); Sanno v. Preiser, 397 F.Supp. 560, 561-562 (S.D.N.Y.1975)). Therefore, Petitioner's bare allegation that he has been treated differently than other inmates is simply not sufficient to establish an equal protection violation where there can be no "similarly situated" prisoner for purposes of equal protection analysis.

### 4.    Claims Addressed to Board's Exercise of Discretion

Petitioner's claims E-J are nothing more than his disagreement with the Board's exercise of its discretion in determining that he should not be released on parole. In this respect, as explained above, review is limited to determination of whether substantive due process has been violated. This court may not "second-guess" a state parole decision, and the limit of the court's review is to

10

determine if there is "some basis" for the challenged decision. Hunterson v. DiSabato , 308 F.3d 236, 246 (3d Cir. 2002) citing Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir.2001).

Again, as noted above, the Board's power to consider Petitioner's background, including all of his prior conduct and medical treatment, is unbridled. Indeed, the Board is directed to consider all relevant information concerning the prisoner's character and history. 61 Pa. Cons.Stat. Ann. § 331.19. There is no indication here that improper factors were considered, and the reasons relied upon for denying parole are clearly rationally related to interests of the Commonwealth. Petitioner's complaint is, in fact, not so much with the nature of the circumstances considered as the conclusions reached by the Board. For example, Petitioner disagrees with the Board that he has shown a lack of remorse for his crimes. He also asserts that he has resolved the problems which caused him to commit crimes, and that he has a "positive support system" available to him should he be released (Doc. No. 3, page 3). These differences of opinion Petitioner has with the Board concerning his suitability for release are not proper fodder for a habeas petition. Instead, Petitioner is asking the court to second-guess the Board, which is improper. Hunterson, supra. Hence, these claims must be rejected.

### 5.     The Americans with Disabilities Act.

Petitioner's final assertion is that the Board's consideration of his prior treatment for an unspecified mental health condition is a violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101. As noted above, the Board is permitted wide latitude in considering whether to release a particular inmate on parole. In Petitioner's case, this included information relating to his treatment for a mental disorder. The court can find no provision of the Americans with Disabilities Act which would prevent consideration of mental health treatment by a parole board. Compare, Thomas v. Davis, 295 F.3d 890, 898 n. 4 (9th Cir. 2002)("A person's disability that leads one to a propensity to commit crime may certainly be relevant in assessing whether that individual is qualified for parole."). Hence, this claim must be rejected.

11

### D.     **Certificate of Appealability.**

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."   In Slack v. McDaniel, 529 U.S. 473, 474 (2000), the Supreme Court stated that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Applying this standard here, jurists of reason would not find it debatable whether Petitioner's Petition for Writ of Habeas Corpus raise valid claims of the denial of a constitutional right. Accordingly, a certificate of appealability should be denied.

### III.    **CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be dismissed and that a certificate of appealability be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

      /s/Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated: March 7, 2007

cc:   The Honorable Sean J. McLaughlin
      United States District Judge